## COMMISSIONER OF INTERNAL REVENUE v. WARREN WEBSTER TRUST NO. I et al.

## SAME v. MARTA DANNENBAUM TRUST et al.

## SAME v. DOROTHY DANNENBAUM TRUST.

### Nos. 7724, 7745, 7746.

Circuit Court of Appeals, Third Circuit.

Oct. 6, 1941.

L. W. Post, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Asst. to the Atty. Gen., on the brief), for petitioner.

Andrew B. Young, of Philadelphia, Pa., for respondents in No. 7724.

C. Russell Phillips, of Philadelphia, Pa. (Stephen T. Dean and Montgomery & McCracken, all of Philadelphia, Pa., on the brief), for respondents in Nos. 7745 and 7746.

Before BIGGS, MARIS, and JONES, Circuit Judges.

MARIS, Circuit Judge.

In 1931 Warren Webster, Sr., now deceased, transferred securities, without consideration, to a trust bearing his name. At the time of the transfer the fair market value of the securities was less than the basis to the donor. In 1936 the trustees sold the securities. The sale price was less than the basis to the donor but more than the fair market value at the time of the transfer in trust. In their 1936 income tax returns the trustees used the basis to the donor in determining gain or loss resulting from the sale and claimed a deductible loss. The Commissioner disallowed the claimed deduction. In determining that there was no loss as a result of the sale of the securities the Commissioner used as a basis the fair market value of the securities at the time of the gift in trust. The Board of Tax Appeals held this to be error. In two cases involving trusts created by Herman F. W. Dannenbaum in 1932 and presenting substantially similar facts and issues the Board entered similar decisions. We now have for determination the Commissioner's petitions to review these three decisions of the Board.

The problem arises because the donor's transfer of securities in each case was both a gift and a transfer in trust. Section 113(a) of the Revenue Acts of 1934 and 1936, 26 U.S.C.A. Int.Rev.Code § 113(a) (2, 3), provides one rule for determining loss resulting from a sale in the case of property acquired by gift and another in the case of property transferred in trust. The question which we must decide is which rule is applicable to the facts of the cases before us.

The relevant portion of the section dealing with the basis for determining gain or loss provides:

"§ 113. Adjusted basis for determining gain or loss—

"(a) Basis (unadjusted) of property. The basis of property shall be the cost of such property; except that—

\* \* \* \* \*

"(2) Gifts after December 31, 1920. If the property was acquired by gift after December 31, 1920, the basis shall be the same as it would be in the hands of the donor or the last preceding owner by whom it was not acquired by gift, except that for the purpose of determining loss the basis shall be the basis so determined or the fair market value of the property at the time of the gift, whichever is lower. \* \* \*

"(3) Transfer in trust after December 31, 1920. If the property was acquired after December 31, 1920, by a transfer in trust (other than by a transfer in trust by a bequest or devise) the basis shall be the same as it would be in the hands of the grantor, increased in the amount of gain or decreased in the amount of loss recognized to the grantor upon such transfer under the law applicable to the year in which the transfer was made."

The taxpayers successfully contended before the Board that since the property was acquired as a result of a transfer in trust subparagraph (a) (3) was applicable. The Commissioner urges that subparagraph (a) (3) must be restricted solely to those transfers in trust which are made for a valuable consideration, that the transfer in this case was a gift since it was made without consideration and that subparagraph (a) (2) is, therefore, applicable. It is obvious that if both subparagraphs are construed broadly they both apply since the tranfers with which we are concerned are at once both gifts and transfers in trust. Such a construction is clearly inadmissible since its effect would be to apply conflicting rules to the same transaction. We must, therefore, determine whether subparagraph (a) (2) applies only to those gifts which are not transfers in trust or whether subparagraph (a) (3) applies only to those transfers in trust which are not gifts. We find no justification for so limiting the application of subparagraph (a) (3) either in its language or in its legislative history. On the other hand the legislative history of the Revenue Acts sup-

ports the view that subparagraph (a) (2) is not intended to apply to any transfers in trust even though made by way of gift.

In the first place, as will later appear, subparagraph (a) (3) was enacted three years later than subparagraph (a) (2). The phrase "transfer in trust" as used in subparagraph (a) (3) was broad enough to describe a transfer without valuable consideration as well as one made for consideration. As a practical matter the normal application of the phrase would be to a voluntary trust created by way of gift since the occasions when consideration passes for a transfer in trust are comparatively rare. Although in drafting subparagraph (a) (3) Congress expressly excepted transfers in trust by bequest or devise from its purview it did not enlarge that exception so as to include all other types of transfers in trust made without valuable consideration. Had Congress intended that the existing provisions of subparagraph (a) (2) should apply to gifts in trust it would have been appropriate to have added to the parenthetical clause of subparagraph (a) (3) which now reads "(other than by a transfer in trust by a bequest or devise)" an additional qualification such as "or by a transfer in trust by way of gift."

■ Furthermore it will be observed that subparagraph (a) (3) if restricted to transfers in trust for a valuable consideration would become meaningless. Section 113(a) provides as a general rule that the basis of property sold shall be cost. Then follows in the section a list of nineteen exceptions of which subparagraph (a) (3) is one. When that subparagraph is applied to a trust created for a valuable consideration, the basis carried forward from the donor is, under the final clause of the subparagraph,[1] to be increased by the gain or decreased by the loss realized by him in the transfer. In either case the resulting basis is the equivalent of the cost to the transferee. It will thus be seen that under the narrow interpretation urged by the Commissioner the exception contained in subparagraph (a) (3) becomes no exception to but merely a reiteration of the general rule of Section 113(a). The only case in which the subparagraph becomes an actual exception is the case of a transfer in trust without consideration. Obviously the subparagraph should be so construed as to give it meaning and function. So construed we think it was intended to apply primarily to transfers in trust without consideration and, by the final clause to which we have referred, to deprive transfers in trust for a valuable consideration of the benefits of the exception, relegating them to the ordinary rule applicable to property generally.

The legislative history of subparagraph (a) (3) indicates that it and not subparagraph (a) (2) was intended by Congress to apply to voluntary transfers in trust. The substance of Section 113(a) (3) governing the basis for determining gain or loss resulting from the sale of property acquired by transfer in trust first appeared in the Revenue Act of 1924 as Section 204(a) (3), 26 U.S.C.A. Int.Rev.Acts, page 7. This section was added at that time because there was some difference of opinion as to whether Section 202(a) (2) of the Revenue Act of 1921, 42 Sat. 229, which dealt with the basis for determining gain or loss upon the sale of property acquired by gift was applicable when the transfer was to a voluntary trust.[2] The explanatory comment to Section 204(a) (3) made by the Senate Finance Committee [3] stated:

"There is no provision in the existing law which corresponds to paragraph 3 of subdivision (a). According to this paragraph, the basis for determining gain or loss from the sale or other disposition of property acquired after December 31, 1920, *by a voluntary transfer in trust,* is the same as it would be in the hands of the grantor, following the principle laid down in paragraph (2) as to gifts. If the transfer in trust resulted in the recognition of a taxable gain or a deductible loss to the grantor, then this basis will be increased or decreased accordingly." [Italics supplied.]

---

[1] " * * *, increased in the amount of gain or decreased in the amount of loss recognized to the grantor upon such transfer under the law applicable to the year in which the transfer was made."

[2] The decision in Helvering v. New York Trust Co., 292 U.S. 455, 54 S.Ct. 806, 78 L.Ed. 1361, is limited to a ruling that section 202(a) (2) of the Revenue Act of 1921 did apply to property acquired through a gratuitous transfer to a trust. It did not deal with the issue now before the court since the Act of 1921 contained no section dealing specifically with transfers in trust.

[3] 68th Cong., 1st Sess., Senate Report No. 398, p. 17.

The contemporaneous opinion of the Senate therefore was that it had enacted a section applicable to a "voluntary transfer in trust," which is but another method of saying that the section was applicable to a transfer in trust without consideration. Section 204(a) (3) was succeeded by Section 113(a) (3) in 1928, 26 U.S.C.A. Int. Rev.Code § 113(a) (3). The Senate Finance Committee [4] stated that the effect of an amendment (in a matter not herein material) was to include within the paragraph all classes of transfers in trust. This is of course sufficiently comprehensive to include transfers in trust without consideration.

From 1924 to 1934 each successive revenue act contained substantially identical provisions governing the basis for gifts and for trusts. In the latter year Section 113(a) (2) was amended, 26 U.S.C.A. Int. Rev.Code, § 113(a) (2), to provide that if the sale of properties acquired by gift was at a loss the basis was to be either the cost to the donor or the fair market value at the time of the gift, whichever was lower. The amendment was restricted to subparagraph (a) (2) and was made to prevent tax evasion. It did not purport to make any changes in subparagraph (a) (3). The illustration given by the Ways and Means Committee [5] of the House of Representatives of the type of tax evasion which the amendment was intended to circumvent could not readily occur by the use of the trust device. It is significant that no change was made by Congress in the descriptive scope of either the gift or trust subparagraphs.

There remains for our consideration the effect to be given the Treasury Regulations. When the change in the basis for determining loss from the sale of property acquired by gift was made by the Revenue Act of 1934 the Treasury Department promulgated Regulations 86. Article 113 of those regulations for the first time attempted to make a distinction between voluntary trusts and trusts for consideration. The pertinent portions of that article read:

"Section 113(a) (2) applies to all gifts of whatever description; whether by a transfer in trust or otherwise; * * * Section 113(a) (3) applies in general to all property acquired after December 31, 1920, by transfer in trust. It does not apply to property acquired as a *gift* by transfer in trust, or by bequest or devise; or by an instrument which, under section 113(a) (5), is to be treated as though it were a will. With these exceptions, section 113(a) (3) applies to all property acquired after December 31, 1920, by any transfer in trust of whatever description. If the transfer in trust be a gift, it is not within section 113(a) (3), but is within section 113(a) (2) or section 113(a) (4)."

These provisions amount to an unequivocal pronouncement by the Treasury Department that a transfer in trust which is also a gift comes within the purview of the gift and not the trust subparagraph. The regulation is an administrative ruling interpretative of the statute. Much has been written both in decided cases and in legal literature upon the effect to be given such a ruling. It is clear, however, that while such regulations may interpret and fill in details of the statute, they may not amend it or alter the meaning which Congress intended it to have.[6] The latter function is reserved by the Constitution to Congress alone. We think that the regulation in question is invalid as an attempted invasion of the Congressional field. It is urged, however, that when the statute has been reenacted and the regulations have been long continued and uniform, Congress must be presumed to have adopted the administrative interpretation contained in the regulations. There is ample authority for this so-called "reenactment" rule, although it has been much criticized [7] for reasons which seem to us to be cogent. However we think it is clear that the rule does not apply here. The statutory provisions with

---

[4] 70th Cong., 1st Sess., Senate Report No. 960, pp. 26, 27.

[5] 73d Cong., 2d Sess., House Report No. 704, p. 27.

[6] Koshland v. Helvering, 298 U.S. 441, 56 S.Ct. 767, 80 L.Ed. 1268, 105 A.L.R. 756; Manhattan General Equipment Co. v. Commissioner, 297 U.S. 129, 56 S.Ct. 397, 80 L.Ed. 528; Massachusetts Mutual Life Ins. Co. v. United States, 288 U.S. 269, 53 S.Ct. 337, 77 L.Ed. 739.

[7] Regulations, Reenactment and the Revenue Acts—Robert C. Brown—54 Harv. Law Rev. 377; A Summary of the Regulations Problem—Erwin N. Griswold, 54 Harv. Law Rev. 398; The Scope and Effect of Treasury Regulations Under the Income, Estate and Gift Taxes—Stanley S. Surrey—88 Pa. Law Rev. 556.

which we are concerned have been contained in each Revenue Act commencing with the Revenue Act of 1924, whereas the regulations upon which the Commissioner relies were first adopted in 1934, ten years later. During that period of ten years the Commissioner did not suggest the interpretation for which he now contends. His belated change in view can hardly be imputed to Congress. We conclude that Section 113(a) (3) was applicable to the transfers in trust in each of the cases before us.

The decisions of the Board of Tax Appeals are affirmed.